Glenn W. Mattar #13228
Denenberg Tuffley, PLLC
28411 Northwestern Hwy.
Suite 600
Southfield, MI 48034
Phone: (248) 549-3900
Fax: (248) 593-5808
E-mail:gmattar@dt-law.com

And

Jack Slavik #5962
Cozen O'Connor
999 Third Avenue, Suite 1900
Seattle, WA 89104
Phone: (206) 373-7238
Fax: (866) 229-5685
Email: jslavik@cozen.com

*Attorneys for Plaintiff*

CLERK OF THE
DISTRICT COURT
CONNIE MATTFIELD

2016 AUG 15 PM 3:16

FILED
BY Connie Mattfield
DE (illegible)

# MONTANA FOURTEENTH JUDICIAL DISTRICT COURT
## MUSSELSHELL COUNTY

| | |
|---|---|
| SIGNAL PEAK ENERGY, LLC<br><br>Plaintiff,<br><br>vs.<br><br>GENERON IGS, INC.; SULLAIR, LLC; POWER SERVICE, INC. and JOHN DOES 1-10.<br><br>Defendants. | Cause No. DV-16-43<br>Judge Randal I. Spaulding<br><br>**COMPLAINT AND DEMAND FOR TRIAL BY JURY** |

COMES NOW Plaintiff, Signal Peak Energy, LLC by and through its undersigned counsel, and for its Complaint and Demand for Trial by Jury states and alleges as follows:

**PARTIES AND JURISDICTION**

1. Plaintiff Signal Peak Energy, LLC ("Signal Peak") is a Delaware corporation with its principal place of business in Columbus, Ohio.

2. Upon information and belief, Defendant Generon IGS, Inc. ("Generon") is a

COMPLAINT AND DEMAND FOR TRIAL BY JURY

Page 1 of 16

Delaware corporation with its principal place of business in Houston Texas.

3. Upon information and belief, Defendant Sullair, LLC ("Sullair") is an Indiana limited liability company with its principal place of business in Michigan City, Indiana.

4. Upon information and belief, Defendant Power Service, Inc. ("Power Service") is a Wyoming Corporation with its principal place of business in Casper, Wyoming.

5. Upon information and belief, John Does 1-10 are individuals and/or companies, including subcontractors and manufacturers, who participated in and/or provided products used in the construction, manufacture, installation, maintenance, service, commissioning, and/or inspection of the nitrogen generating plant, including but not limited to the subject compressor unit.

6. The amount in controversy exceeds the jurisdictional minimum of this Court.

7. Venue is proper in this Court as the events giving rise to Plaintiff's claims occurred in the Town of Roundup, County of Musselshell, State of Montana.

**FACTS**

8. At all times relevant herein, Signal Peak owned a coal mine located at 100 Portal Drive in Roundup, Montana (the "Mine").

9. The Mine has a containerized nitrogen generating plant that was supplied by Defendant Generon and installed/commissioned in various stages from August, 2012 through April 2013 (the "Plant").

10. Generon installed and commissioned the various components of the Plant, which included nitrogen generating and compressor units (among other components).

11. On November 24, 2014, at approximately 9:30 A.M., a Signal Peak employee turned on the Plant (it has previously been idle for three weeks).

COMPLAINT AND DEMAND FOR TRIAL BY JURY

12. At approximately 11:25 A.M., smoke was discovered escaping from one of the plant's compressor units (C9) (the "Compressor Unit").

13. Upon further inspection a fire was discovered within the Compressor Unit and the fire had spread to a nitrogen production unit (NPU2) and the motor control center (the "Fire").

14. The Fire was extinguished shortly after its discovery.

15. However, Fire caused extensive damage to the Compressor Unit, the nitrogen production unit, and the motor control center.

16. The Fire also caused Signal Peak significant extra expenses in renting a temporary nitrogen generator when repairs to the plant were ongoing.

17. Damages from the Fire totaled $2,355,271.00.

18. Subsequent expert investigations revealed the Fire originated in the oil/air separator in the Compressor Unit.

19. The oil/air separator was manufactured by Defendant Sullair.

20. The Plant was maintained and serviced by Defendant Power Service.

21. Expert investigations also revealed that Generon improperly installed the Compressor Unit.

22. Specifically, Generon installed the Compressor Unit's oil pressure switch and temperature switch (safety devices) with the incorrect setting.

23. The incorrect setting caused the Compressor Unit to shut down shortly after start-up during Generon's commissioning process.

24. Instead of setting the switches to the correct setting, Generon employees simply wired ("jumped") around them, thereby rendering them totally ineffective.

25. The failure of these switches to be installed correctly caused and/or contributed to

COMPLAINT AND DEMAND FOR TRIAL BY JURY

the aforementioned damage.

## COUNT I – NEGLIGENCE/GROSS NEGLIGENCE (GENERON)

26. Plaintiff restates and re-alleges all paragraphs above.

27. At all times relevant herein Generon had a duty to exercise reasonable care when designing, manufacturing, installing, commissioning, inspecting, and or servicing the Plant, including the Compressor Unit, so as to avoid damage to Signal Peak's property.

28. Generon breached its duty through the following acts and/or omissions constituting negligence and/or gross negligence, including but not limited to:

   a. Failing to install the Compressor Unit with the oil pressure and temperature safety switches on the correct setting;

   b. Wiring around the safety switches and rendering them ineffective;

   c. Failing to include additional safety switches or monitoring devices in the Compressor Unit that could have prevented the Fire;

   d. Failing to properly design and install the Compressor Unit so a fire would not occur;

   e. Failing to use reasonable care when designing, manufacturing, installing, commissioning, and or servicing the Plant, including but not limited to the Compressor Unit;

   f. Failing to provide adequate warnings/instructions as to the use, maintenance, operation, and service of the Plant, including but not limited to the Compressor Unit;

   g. Improperly delegating, hiring, and/or supervising the workmanship and safety of the services delegated and/or subcontracted to another entity; and

   h. Any other acts or omissions that may become known during the course of litigation.

29. As a direct and proximate result of Generon's negligence and/or gross negligence, the Fire occurred and caused extensive damage to Signal Peak's property and resulted in significant extra expense.

30. Damages from the Fire totaled $2,355,271.00.

**WHEREFORE**, Plaintiff respectfully request this Court award it a judgment against Generon in an amount to be proven at trial, together with costs, attorney's fees, expenses, pre- and post- judgment interest and any other relief this Court deems just and proper.

## COUNT II – BREACH OF EXPRESS AND/OR IMPLIED WARRANTIES (GENERON)

31. Plaintiff restates and re-alleges all paragraphs above.

32. Generon designed, manufactured, sold, installed, commissioned and/or serviced inspected the Plant, including but not limited to the Compressor Unit.

33. Generon impliedly and/or expressly warranted that the Plant, including but not limited to the Compressor Unit, would be fit for the ordinary purpose the Plant was to be used, that the Plant would be fit for Signal Peak's particular purposes, that the Plant would be of fair average quality, that the Plant would be free from defects, and that it would design, manufacture and install the Plant with reasonable care.

34. Generon breached its express and/or implied warranties through the following acts and/or omissions:

    a. Failing to install the Compressor Unit with the oil pressure and temperature safety switches on the correct setting;

    b. Wiring around the safety switches and rendering them ineffective;

    c. Failing to include additional safety switches or monitoring devices in the Compressor Unit that could have prevented the Fire;

    d. Failing to properly design and install the Compressor Unit so a fire would not occur;

    e. Failing to use reasonable care when designing, manufacturing, installing, commissioning, and or servicing the Plant, including but not limited to the Compressor Unit;

  f. Failing to provide adequate warnings/instructions as to the use, maintenance, operation, and service of the Plant, including but not limited to the Compressor Unit;

  g. Improperly delegating, hiring, and/or supervising the workmanship and safety of the services delegated and/or subcontracted to another entity; and

  h. Any other acts or omissions that may become known during the course of litigation.

35. As a direct and proximate result of Generon's breach of its express and/or implied warranties, the Fire occurred and caused extensive damage to Signal Peak's property and resulted in significant extra expense.

36. Damages from the Fire totaled $2,355,271.00.

**WHEREFORE**, Plaintiff respectfully request this Court award it a judgment against Generon in an amount to be proven at trial, together with costs, attorney's fees, expenses, pre- and post- judgment interest and any other relief this Court deems just and proper.

## COUNT III – BREACH OF CONTRACT (GENERON)

37. Plaintiff restates and re-alleges all paragraphs above.

38. Signal Peak contracted with Generon whereby Generon agreed to design, manufacture, sell, supply, install, and commission the Plant, including but not limited to the Compressor Unit.

39. Generon breached its contractual obligations through the following actions and/or omissions, including but not limited to:

  a. Failing to install the Compressor Unit with the oil pressure and temperature safety switches on the correct setting;

  b. Wiring around the safety switches and rendering them ineffective;

  c. Failing to include additional safety switches or monitoring devices in the Compressor Unit that could have prevented the Fire;

d. Failing to properly design and install the Compressor Unit so a fire would not occur;

e. Failing to use reasonable care when designing, manufacturing, installing, commissioning, and or servicing the Plant, including but not limited to the Compressor Unit;

f. Failing to provide adequate warnings/instructions as to the use, maintenance, operation, and service of the Plant, including but not limited to the Compressor Unit;

g. Improperly delegating, hiring, and/or supervising the workmanship and safety of the services delegated and/or subcontracted to another entity; and

h. Any other acts or omissions that may become known during the course of litigation.

40. As a direct and proximate result of Generon's breach of contract, the Fire occurred and caused extensive damage to Signal Peak property and resulted in significant extra expense.

41. Damages from the Fire totaled $2,355,271.00.

**WHEREFORE**, Plaintiff respectfully request this Court award it a judgment against Generon in an amount to be proven at trial, together with costs, attorney's fees, expenses, pre- and post- judgment interest and any other relief this Court deems just and proper.

## COUNT IV – STRICT PRODUCTS LIABILITY (GENERON)

42. Plaintiff restates and re-alleges all paragraphs above.

43. At all pertinent times herein, Generon was in the business of manufacturing, assembling, designing, producing, inspecting, selling, and/or otherwise placing into the stream of containerized nitrogen generating plants, including compressor units.

44. Generon, in whole or in part, manufactured, assembled, designed, produced, inspected, and/or sold the Plant, including but not limited to the Compressor Unit.

COMPLAINT AND DEMAND FOR TRIAL BY JURY

45. At the time the Plant, including but not limited to the Compressor Unit, left the control of Generon, a defect existed that rendered the Plant defective in that it was dangerous to an extent beyond that anticipated by the ordinary user.

46. The Plant, including but not limited to the Compressor Unit, was defective in manufacture, design and/or warning/instruction as:

    a. Generon failed to install/manufacture the Compressor Unit with the oil pressure and temperature safety switches on the correct setting;

    b. Generon wired around the safety switches and rendering them ineffective;

    c. Generon failed to include additional safety switches or monitoring devices in the Compressor Unit that could have prevented the Fire;

    d. Generon failed to properly design and install/manufacture the Compressor Unit so a fire would not occur;

    e. Generon failed to provide adequate warnings/instructions as to the use, maintenance, operation, and service of the Plant, including but not limited to the Compressor Unit;

    f. Generon failed to use reasonable care when designing, manufacturing, installing, commissioning, and or servicing the Plant, including the Compressor Unit;

    g. Any other evidence of manufacturing, design and/or warning/instruction defects that may become known during the course of litigation.

47. As a direct and proximate result of the defective condition of the Plant, including but not limited to the Compressor Unit, the Fire occurred and caused extensive damage to Signal Peak property and resulted in significant extra expense.

48. Damages from the Fire totaled $2,355,271.00.

**WHEREFORE**, Plaintiff respectfully request this Court award it a judgment against Generon in an amount to be proven at trial, together with costs, attorney's fees, expenses, pre- and post- judgment interest and any other relief this Court deems just and proper.

## COUNT V – NEGLIGENCE (SULLAIR)

49. Plaintiff restates and re-alleges all paragraphs above.

50. At all times relevant herein Sullair had a duty to exercise reasonable care when designing, manufacturing, installing, and/or commissioning the Sullair components in the Compressor Unit, including but not limited to the oil/air separator, so as to avoid damage to Signal Peak's property.

51. Sullair breached its duty through the following acts and/or omissions constituting negligence and/or gross negligence, including but not limited to:

    a. Failing to design and manufacture the subject oil/air separator to allow for adequate grounding to prevent sparking or ignition;

    b. Failing to provide adequate warnings and instructions as to the use, maintenance, and service of the subject oil/air separator;

    d. Failing to properly design and manufacture the subject oil/air separator so a fire would not occur;

    e. Failing to use reasonable care when designing, manufacturing, providing warnings/instructions and/or installing the subject oil/air separator and other components in the Compressor Unit;

    f. Improperly delegating, hiring, and/or supervising the workmanship and safety of the services delegated and/or subcontracted to another entity; and

    g. Any other acts or omissions that may become known during the course of litigation.

52. As a direct and proximate result of Sullair's negligence, the Fire occurred and caused extensive damage to Signal Peak's property and resulted in significant extra expense.

53. Damages from the Fire totaled $2,355,271.00

**WHEREFORE,** Plaintiff respectfully request this Court award it a judgment against Sullair in an amount to be proven at trial, together with costs, attorney's fees, expenses, pre- and post- judgment interest and any other relief this Court deems just and proper.

## COUNT VI – BREACH OF EXPRESS AND/OR IMPLIED WARRANTIES (SULLAIR)

54. Plaintiff restates and re-alleges all paragraphs above.

55. Sullair designed and manufactured components of the Plant that were incorporated into the Compressor Unit, including but not limited to the subject oil/air separator.

56. Sullair impliedly and/or expressly warranted that its components, including but not limited to the subject oil/air separator, would be fit for the ordinary purpose such components are used, that such components would be fit for Signal Peak's particular purposes, that such components were of fair average quality and that the components would be free from defects.

57. Sullair breached its express and/or implied warranties through the following acts and/or omissions:

   a. Failing to design and manufacture the subject oil/air separator to allow for adequate grounding to prevent sparking or ignition;

   b. Failing to provide adequate warnings and instructions as to the use, maintenance, and service of the subject oil/air separator;

   d. Failing to properly design and manufacture the subject oil/air separator so a fire would not occur;

   e. Failing to use reasonable care when designing, manufacturing, providing warnings/instructions and/or installing the subject oil/air separator and other components in the Compressor Unit;

   f. Improperly delegating, hiring, and/or supervising the workmanship and safety of the services delegated and/or subcontracted to another entity; and

   g. Any other acts or omissions that may become known during the course of litigation.

58. As a direct and proximate result of Sullair's breach of its express and/or implied warranties, the Fire occurred and caused extensive damage to Signal Peak property and resulted in significant extra expense.

59. Damages from the Fire totaled $2,355,271.00

**WHEREFORE**, Plaintiff respectfully request this Court award it a judgment against Sullair in an amount to be proven at trial, together with costs, attorney's fees, expenses, pre- and post-judgment interest and any other relief this Court deems just and proper.

## COUNT VII – STRICT PRODUCTS LIABILITY (SULLAIR)

60. Plaintiff restates and re-alleges all paragraphs above.

61. At all pertinent times herein, Sullair was in the business of manufacturing, assembling, designing, producing, inspecting, selling, and/or otherwise placing into the stream of commerce components that were incorporated into the Compressor Unit, including but not limited to the subject oil/air separator.

62. Sullair, in whole or in part, manufactured, assembled, designed, produced, inspected, an/or sold the subject components, including but not limited to the subject oil/air separator, and/or placed the components into the stream of commerce.

63. At the time the components, including but not limited to the subject oil/air separator, left the control of Sullair, a defect existed that rendered the components defective in that they were dangerous to an extent beyond that anticipated by the ordinary user.

64. The components, including but not limited to the subject oil/air separator were defective in manufacture, design and/or warning/instruction as:

    a. Sullair failed to design and manufacture the subject oil/air separator to allow for adequate grounding to prevent sparking or ignition;

    b. Sullair failed to provide adequate warnings and instructions as to the use, maintenance, and service of the subject oil/air separator;

    d. Sullair failed to properly design and manufacture the subject oil/air separator so a fire would not occur;

    e. Sullair failed to use reasonable care when designing, manufacturing,

providing warnings/instructions and/or installing the subject oil/air separator and other components in the Compressor Unit;

g.  Any other evidence of manufacturing, design and/or warning/instruction defects that may become known during the course of litigation.

65.  As a direct and proximate result of the defective condition of the components, including but not limited to the subject oil/air separator, the Fire occurred and caused extensive damage to Signal Peak property and resulted in significant extra expense.

66.  Damages from the Fire totaled $2,355,271.00

**WHEREFORE**, Plaintiff respectfully request this Court award it a judgment against Sullair in an amount to be proven at trial, together with costs, attorney's fees, expenses, pre- and post-judgment interest and any other relief this Court deems just and proper.

## COUNT VIII – NEGLIGENCE (POWER SERVICE)

67.  Plaintiff restates and re-alleges all paragraphs above.

68.  At all times relevant herein Power Service had a duty to exercise reasonable care when servicing, inspecting, and/or maintaining the Plant, including but not limited to the Compressor Unit, so as to avoid damage to Signal Peak's property.

69.  Power Service breached its duty through the following acts and/or omissions constituting negligence, including but not limited to:

a.  Failing to use reasonable care when performing service, inspection and/or maintenance work on the Plant, including but not limited to the Compressor Unit;

b.  Failing to warn Signal Peak of the dangerous condition and safety hazard posed by the Compressor Unit;

c.  Improperly delegating, hiring, and/or supervising the workmanship and safety of the services delegated and/or subcontracted to another entity; and

d.  Any other acts or omissions that may become known during the course of litigation.

70. As a direct and proximate result of Power Service's negligence, the Fire occurred and caused extensive damage to Signal Peak property and resulted in significant extra expense.

71. Damages from the Fire totaled $2,355,271.00

**WHEREFORE**, Plaintiff respectfully request this Court award it a judgment against Power Service in an amount to be proven at trial, together with costs, attorney's fees, expenses, pre- and post- judgment interest and any other relief this Court deems just and proper.

## COUNT IX – BREACH OF CONTRACT (POWER SERVICE)

72. Plaintiff restates and re-alleges all paragraphs above.

73. Signal Peak contracted with Power Service, whereby Power Service agreed to provide service, inspection and/or maintenance work on the Plant, including but not limited to the Compressor unit.

74. Power Service breached its contractual duties through the following acts and/or omissions:

   a. Failing to use reasonable care when performing service, inspection and/or maintenance work on the Plant, including but not limited to the Compressor Unit;

   b. Failing to warn Signal Peak of the dangerous condition and safety hazard posed by the Compressor Unit;

   c. Improperly delegating, hiring, and/or supervising the workmanship and safety of the services delegated and/or subcontracted to another entity; and

   d. Any other acts or omissions that may become known during the course of litigation.

75. As a direct and proximate result of Power Service's breach of contract, the Fire occurred and caused extensive damage to Signal Peak property and resulted in significant extra expense.

COMPLAINT AND DEMAND FOR TRIAL BY JURY

76. Damages from the Fire totaled $2,355,271.00

**WHEREFORE**, Plaintiff respectfully request this Court award it a judgment against Power Service in an amount to be proven at trial, together with costs, attorney's fees, expenses, pre- and post- judgment interest and any other relief this Court deems just and proper.

## COUNT X – BREACH OF EXPRESS AND/OR IMPLIED WARRANTIES (POWER SERVICE)

77. Plaintiff restates and re-alleges all paragraphs above.

78. Signal Peak contracted with Power Service, whereby Power Service agreed to provide service, inspection and/or maintenance work on the Plant, including but not limited to the Compressor Unit, and impliedly and/or expressly warranted that it would exercise reasonable care in performing its duties so as to avoid damage to Signal Peak's property.

79. Power Service breached its contractual duties through the following acts and/or omissions:

   a. Failing to use reasonable care when performing service, inspection and/or maintenance work on the Plant, including but not limited to the Compressor Unit;

   b. Failing to warn Signal Peak of the dangerous condition and safety hazard posed by the Compressor Unit;

   c. Improperly delegating, hiring, and/or supervising the workmanship and safety of the services delegated and/or subcontracted to another entity; and

   d. Any other acts or omissions that may become known during the course of litigation.

80. As a direct and proximate result of Power Service's breach of its express and/or implied warranties, the Fire occurred and caused extensive damage to Signal Peak property and resulted in significant extra expense.

81. Damages from the Fire totaled $2,355,271.00

1  **WHEREFORE**, Plaintiff respectfully request this Court award it a judgment against
2  Power Service in an amount to be proven at trial, together with costs, attorney's fees, expenses,
3  pre- and post- judgment interest and any other relief this Court deems just and proper.

## COUNT XI – NEGLIGENCE (DOES)

82. Plaintiff restates and re-alleges all paragraphs above.

33. Upon information and belief, John Does 1-10 are individuals and/or companies, including subcontractors and manufacturers, who participated in and/or provided products used in the construction, manufacture, installation, maintenance, service, commissioning, and/or inspection of the Plant, including but not limited to the Compressor Unit.

84. Upon information and belief, Does 1-10 had duties of reasonable care in regard to participating in or providing products for the construction, manufacture, installation, maintenance, service, commissioning, and/or inspection of the Plant, including but not limited to the Compressor Unit.

85. Upon information and belief, Does 1-10 breached their duties by failing to adequately perform construction, manufacture, installation, maintenance, service, commissioning, and/or inspection services for the Plant, including but not limited to the Compressor Unit, as well as failed to provide adequate products for the same.

86. As a direct and proximate result of the actions and/or omissions of Does 1-10, Fire occurred and caused extensive damage to Signal Peak property and resulted in significant extra expense.

87. Damages from the Fire totaled $2,355,271.00

**WHEREFORE**, Plaintiff respectfully request this Court award it a judgment against Does 1-10 in an amount to be proven at trial, together with costs, attorney's fees, expenses, pre-

and post-judgment interest and any other relief this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED this 15 day of August, 2016.

*[signature]*

Glenn W. Mattar #13228
Denenberg Tuffley, PLLC
28411 Northwestern Hwy.
Suite 600
Southfield, MI 48034
Phone: (248) 549-3900
Fax:   (248) 593-5808
E-mail: gmattar@dt-law.com

And

Jack Slavik #5962
Cozen O'Connor
999 Third Avenue, Suite 1900
Seattle, WA 98104
Phone:  (206) 373-7238
Fax:    (866) 229-5685
Email: jslavik@cozen.com

*Attorneys for Plaintiff*