IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| SIGNAL PEAK ENERGY, LLC, | CV  17-66-BLG-SPW-TJC |
| Plaintiff, | |
| vs. | **FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| GENERON IGS, INC; SULLAIR, LLC; POWER SERVICE, INC.; JOHN DOES 1-10, | |
| Defendants. | |

Plaintiff Signal Peak Energy, LLC ("Signal Peak") filed this action against Generon IGS, Inc. ("Generon"), Sullair, LLC, ("Sullair" [1]) and Power Service, Inc. ("Power Service") seeking damages related to a fire that broke out at its Roundup, Montana coal mine on November 14, 2014.  (Doc. 4.)  Generon has also filed a Crossclaim against Sullair and Power Service.  (Doc. 19.)

Presently before the Court are Sullair's Motions to Dismiss the Complaint and the Crossclaim for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), and for failure to state a claim pursuant to 12(b)(6).  (Docs. 13, 20.)

---

[1] Sullair clarifies that at the time the products at issue were manufactured and sold, Sullair, LLC, did not exist.  (Doc. 14 at 2.)  The entity was Sullair Corporation, which converted to Sullair, LLC, through a "Plan of Entity Conversion under the Indiana Business Corporation law in 2012.  (*Id.*)  As used in this order, the term "Sullair" encompasses both Sullair, LLC and Sullair Corporation.

1

Having considered the parties' submissions, the Court **RECOMMENDS** Sullair's Motion to Dismiss for lack of personal jurisdiction be **GRANTED**.

## I.    FACTUAL BACKGROUND

"In ruling on a motion to dismiss for lack of personal jurisdiction, a court may consider declarations, discovery materials, and uncontroverted allegations in the complaint." *Nationwide Agribusiness Ins. Co. v. Buhler Barth GmbH*, 2015 WL 6689572, *3 (E.D. Cal. Oct. 30, 2015) (citing *ADO Fin., AG v. McDonnell Douglas Corp.*, 931 F.Supp. 711, 714 (C.D. Cal. 1996)).  Therefore, for purposes of the instant motion, the Court accepts as true the uncontroverted facts from Plaintiff's Complaint.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

Signal Peak is a Delaware corporation with its principal place of business in Columbus, Ohio.  (Doc. 4 at ¶ 1.)  It owns a coal mine located at 100 Portal Drive in Roundup, Montana (the "Mine"), where the events giving rise to this lawsuit occurred.  (*Id.* at ¶ 8.)

Sullair is an Indiana limited liability company that maintains its principal place of business in Michigan City, Indiana.  (*Id.* at ¶ 3.)  Sullair manufactures and sells air compressors and related equipment.  (Doc. 14-2 at ¶ 4.)  Sullair has three channels or divisions through which it operates.  (*Id.*)  The first and largest is "Commercial and Industrial," which sells compressors for use in industrial

manufacturing facilities.  (*Id.*)  The second channel is "Rental and Infrastructure," which sells portable air compressors used in construction, mining and other large-scale operations.  (*Id.*)  The third channel is "Original Equipment Manufacture Solutions" or "OEM Solutions Group," which sells compressor components that are incorporated into a finished product.  (*Id.*)  One of the products the OEM Solutions Group sells is a compressor component called an "oil/air separator." (*Id.*)  Sullair states that it does business globally, generally by selling its products to independent distributors or equipment rental centers.  (Doc. 14-2 at ¶ 5.)  Sullair admits that from "time to time," it sells products to independent distributors and rental centers in Montana.  (*Id.*)

Relevant here, Sullair manufactured and sold various compressor components, including an oil/air separator, to an independent distributor in Houston, Texas.  (Doc. 4 at ¶ 19; Doc. 14-2 at ¶ 6.)  The Houston distributor in turn resold the compressor components to Generon, which is a Delaware Corporation, with its principle place of business in Houston, Texas.  (Doc. 4 at ¶ 2; Doc. 14-2 at ¶ 6.)

Generon then incorporated the compressor components, including the oil/air separator, into a "containerized nitrogen generating plant" (the "Plant").  (Doc. 4 at ¶¶ 9, 10, 19.)  Generon sold the Plant to Signal Peak, and installed the various

components of the Plant at the mine in stages from August, 2012 through April,

2013.  (*Id.* at ¶¶ 9, 43, 44.)

On November 24, 2014, mine employees discovered smoke escaping from

one of the Plant's compressor units.  (Doc. 4 at ¶ 12.)  Further inspection revealed

a fire within the compressor unit, which spread to other equipment and caused

extensive damage.  A subsequent expert investigation revealed the fire originated

in the oil/air separator manufactured by Sullair.  (*Id.* at ¶ 18.)

Signal Peak alleges that Generon improperly installed the compressor unit

containing Sullair's oil/air separator.  (*Id.* at ¶¶ 18, 21.)  Specifically, Generon

allegedly installed the compressor unit's oil pressure switch and temperature

switch, which are safety devices, with the incorrect setting.  (*Id.* at ¶ 22.)  Rather

than installing the switches with the correct setting, Signal Peak claims Generon

employees wired or "jumped" around them, rendering them totally ineffective.  (*Id.*

at ¶ 24.)  Signal Peak asserts the failure to install the switches correctly caused

and/or contributed to the damage.  (*Id.* at ¶ 25.)  As a result of the fire, Signal Peak

alleges it incurred damages totaling $2,355,271.00.  (*Id.* at ¶ 17.)

On August 15, 2016, Signal Peak filed a complaint in state court alleging

claims against Sullair and the other Defendants for negligence, breach of warranty,

and strict products liability.  (Doc. 4 at ¶¶ 49-66.)  The action was removed to this

Court on May 18, 2017.  (Doc. 1.)  Thereafter, Sullair filed the instant motion to dismiss.  (Doc. 13.)

On November 16, 2017, Generon filed a Crossclaim for contribution and/or indemnity against Sullair and Power Service.  (Doc. 19.)  Sullair has also moved to dismiss the Crossclaim.  (Doc. 20.)

## II.    DISCUSSION

Sullair seeks dismissal of the Complaint on two grounds.  First, Sullair argues this Court lacks personal jurisdiction over it, and therefore moves to dismiss Signal Peak's claims pursuant to Fed. R. Civ. P. 12(b)(2).  Second, Sullair argues that even if there is personal jurisdiction, Signal Peak cannot satisfy the necessary elements of its negligence, breach of warranty, or strict products liability claims, and therefore, moves to dismiss Signal Peak's claims pursuant to Fed. R. Civ. P. 12(b)(6).  Sullair further argues that Generon's crossclaim should be dismissed for the same reasons.

### A.    Motion to Dismiss for Lack of Personal Jurisdiction Under Federal Rule of Civil Procedure 12(b)(2)

#### 1.    Legal Standard

When a defendant moves to dismiss a claim for lack of personal jurisdiction, the plaintiff bears the burden of proving that personal jurisdiction exists.  *Learjet, Inc. v. Oneok, Inc. (In re W. States Wholesale Nat. Gas Antitrust Litig.)*, 715 F.3d 716, 741 (9th Cir. 2013) (internal citations omitted).  Where the motion is based on

written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts. *Schwarzenegger*, 374 F.3d at 800.  A court's duty is to inquire into whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction, accepting the plaintiff's allegations as true.  *Id.*  Although the plaintiff cannot simply rest on the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true. Conflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor.  *Id.*

To exercise personal jurisdiction over a non-resident defendant in a diversity case, a federal court must make the following determinations: (1) whether an applicable state rule or statute confers personal jurisdiction over the defendant; and (2) whether assertion of jurisdiction comports with constitutional principles of due process.  *Data Disc Inc. v. Systems Tech. Assocs., Inc.*, 557 F.2d 1280, 1286 (9th Cir. 1977).  With respect to the first inquiry, this Court is bound to look to Montana law.  *Haywood v. Travelers Indem. Co. of Am.*, 2006 WL 2860588, at *2 (D. Mont. October 3, 2016) (citations omitted).

The Montana Supreme Court has articulated a similar two-part test to determine the existence of personal jurisdiction: (1) the court must ascertain whether personal jurisdiction exists pursuant to Montana Rule of Civil Procedure 4(b)(1), Montana's long-arm statute; and (2) the court must assess whether

6

asserting such jurisdiction is consistent with "traditional notions of fair play and substantial justice embodied in the due process clause." *Cimmaron Corp. v. Smith*, 67 P.3d 258, 260 (Mont. 2003) (*citing Threlkeld v. Colorado*, 16 P.3d 359, 361 (Mont. 2000)); *See also Simmons Oil Corp. v. Holly Corp.*, 796 P.2d 189, 193 (Mont. 1990).

Montana's long-arm statute provides in relevant part:

> All persons found within the state of Montana are subject to the jurisdiction of Montana courts. Additionally, any person is subject to the jurisdiction of Montana courts as to any claim for relief arising from the doing personally, or through an employee or agent, of any of the following acts:
> . . .
>
> (B)   the commission of any act resulting in accrual within Montana or a tort action[.][2]

Mont. R. Civ. P. 4(b)(1)(B).

The first sentence of Rule 4(b)(1) establishes the requirements for general jurisdiction. *Cimarron Corp.*, 67 P.3d at 260 (*citing Bi-Lo Foods Inc. v. Alpine Bank, Clifton*, 955 P.2d 154, 157 (Mont. 1998). "A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different state." *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal.*, 137 S.Ct. 1773, 1780 (2017) (emphasis in original).

---

[2] This is the only provision of Rule 4(b)(1) that Signal Peak argues the Court may exercise specific jurisdiction under.

The remainder of Rule 4(b)(1) establishes the requirements for specific jurisdiction. *Cimarron Corp.*, 67 P.3d at 260.  In contrast to general jurisdiction, specific jurisdiction is more limited, and requires the controversy be directly related to the defendant's contacts with the forum. *Bristol-Myers*, 137 S.Ct. at 1780.

If the Court finds it may exercise specific jurisdiction under Mont. R. Civ. P. 4(b)(1), it must next determine whether such exercise is commensurate with the defendant's due process rights under federal law. *Bedrejo v. Triple E Can. Ltd.*, 984 P.2d 739, 742 (Mont. 1999) (*citing Simmons v. State*, 670 P.2d 1372, 1376–77 (Mont. 1983); *Grizzly Sec. Armored Express, Inc. v. Armored Group, LLC*, 255 P.3d 143, 149 (Mont. 2011)).

The Ninth Circuit has developed the following three-part test to assess whether a defendant has sufficient contacts with the forum state to be subject to specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

8

*Schwarzenegger*, 374 F.3d at 802.[3]  "The plaintiff bears the burden of satisfying the first two prongs of the test.  If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state."  *Id.* (internal citations omitted).

### 2.    General Jurisdiction

Sullair asserts there is no basis for exercising general jurisdiction over it because Sullair cannot be "found within" or considered to be "at home" in Montana.  Sullair points out that it was created under the laws of Indiana, and maintains its principal place of business there.  (Doc. 14-1 at ¶¶ 3, 4.)  It does not have employees or bank accounts in Montana, is not licensed or registered to do business in Montana, does not pay taxes in Montana, and does not own property in Montana.  (*Id.* at ¶¶ 4-6.)  Signal Peak does not dispute that there is no basis for asserting general jurisdiction over Sullair.  (Doc. 16 at 5.)  Accordingly, the Court may not exercise general jurisdiction over Sullair.

### 3.    Specific Jurisdiction

Sullair also argues that it is not subject to specific jurisdiction.  Sullair contends that even assuming it purposefully availed itself of the privilege of conducting activities in Montana by selling equipment to independent distributors

---

[3] The Montana Supreme Court adopted this approach in *Simmons Oil Corp*, 670 P.2d at 1378.

and rental centers in the state in the past, the claims in this lawsuit did not arise out of, or result from those activities.  Instead, it argues, the claims arise out of Sullair's non-forum related activities, namely the manufacture of components in Indiana and sale of those components to a distributor in Texas.  Therefore, Sullair contends this Court's exercise of personal jurisdiction over it would violate due process.

Signal Peak argues that the exercise of specific jurisdiction over Sullair satisfies the due process test.  According to Signal Peak, because Sullair previously sold equipment directly to Montana customers and distributors, it has purposefully availed itself of the privilege of conducting business in Montana.  Signal Peak also argues that by delivering its products into the stream of commerce with the expectation that Montana consumers will purchase those products, Sullair has subjected itself to suit in Montana.  Thus, Signal Peak asserts the Court's exercise of jurisdiction over Sullair is presumptively reasonable.  Signal Peak further maintains that once purposeful availment has been shown, there is no need to establish the second element of the specific jurisdiction test – that the claim must arise out of or result from the defendant's forum related activities.

For the reasons set forth below, this Court finds that Sullair is not subject to specific jurisdiction.

/ / /

10

i.    <u>Purposeful Direction</u>

The first requirement under the Ninth Circuit's test for specific jurisdiction is purposeful direction of activities in the forum, or purposeful availment of the privilege of conducting business in the forum.  This requirement ensures that the defendant will not be "haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts . . . or of the unilateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S 462, 475 (1985) (internal quotations and citations omitted).

For cases sounding in tort, the Ninth Circuit applies the purposeful direction prong of this requirement, often referred to as the "effects test." *Axiom Foods, Inc. v. Acerchem International Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017).  Under this test, "[t]he defendant must have '(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'"  *Id.* at 1069 (*quoting Marvix Photo, Inc. v. Brand Techs., Inc.,* 647 F.3d 1218, 1228 (9th Cir. 2011)).

In this case, Signal Peak cannot establish the second requirement of the purposeful direction test.  Sullair did not commit any act relative to the plaintiff's claim which was expressly aimed at the state of Montana.  It is undisputed that the product at issue – the oil/air separator – traveled a long and indirect route to Montana.  As both parties confirm, the oil/air separator was manufactured by

Sullair in Indiana and sold to an independent distributor in Texas, who then sold it to Generon in Texas, who incorporated it into the compressor unit that it sold it to Signal Peak in Montana. (Docs. 14-2 at ¶¶ 5-6; 16 at 2-3.)

Further, there is no indication that Sullair otherwise targeted the state of Montana when it sold the oil/air separator to the distributor in Texas. Sullair asserts that the oil/air separator is a "standard product" that is not designed specifically for use in Montana. It also states that although it advertises in national trade magazines, it does not direct any advertising specifically to Montana. (Doc. 14-2 at ¶ 7.) Signal Peak does not contest these allegations.

The fact that the injury occurred in Montana – or as Signal Peak points out, the tort accrued in Montana - is not sufficient to establish jurisdiction. As made clear by the U.S. Supreme Court's opinion in *Walden v. Fiore*, 571 U.S. 277, 291 (2014), "it is the defendant, not the plaintiff or third parties, who must create contacts with the forum state." *Id.* The "mere fact that [a defendant's] conduct affected plaintiffs with connections to the form State does not suffice to authorize jurisdiction." *Id.*

Nevertheless, Signal Peak maintains that Sullair is subject to specific jurisdiction because it delivered products into the stream of commerce with the expectation that Montana consumers would purchase those products. In this regard Signal Peak points out that Sullair serves the "construction & mining" and "oil &

gas" industries, and that Montana's economy is "largely driven by extractive industries." (Doc. 16 at 10-11.) Thus, Signal Peak concludes "it would be impossible for Sullair to argue that it harbored no expectations that Montana consumers would purchase its products, nor that it expended no efforts to serve the Montana market."

Signal Peak's argument misses the mark. Placing a product into the stream of commerce, without more, does not constitute an act purposefully directed toward the forum State. *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 112 (1987). Furthermore, a defendant's awareness that the product may travel through the stream of commerce to the forum State does not "convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." *Id.* Even if it was foreseeable to Sullair that its products might ultimately travel through the stream of commerce to Montana, foreseeability is not the controlling criterion when assessing purposeful availment. The exercise of specific jurisdiction is appropriate only where the defendant has targeted the forum. *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 882 (2011). "[A]s a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum state. *Id.* "[I]t is the defendant's actions, not his expectations, that empower a State's courts to subject him to judgment." *Id.* at 883.

Accordingly, the Court finds Sullair's conduct in selling the oil/air separator to a Texas distributor, does not rise to the level of "purposeful direction" to satisfy the first requirement of the due process test.

## ii.    Arising Out of Forum Related Activities

The second requirement of the Ninth Circuit's due process analysis is whether the claim arises out of or relates to the defendant's forum-related activities.  Signal Peak first asserts that it is not required to satisfy this element under Montana law.  But this is a question of due process to be determined by federal law.  *Data Disc, Inc.*, 557 F.2d at 1286, n. 3.  *See also Cubbage v. Merchant,* 744 F.2d 665, 667 (9th Cir. 1984) (federal law is controlling on the issue of due process); and *Grizzly Sec. Armored Exp. Inc.*, 255 P.3d at 149 (Montana's exercise of personal jurisdiction must comport with due process under federal law).  Under federal law, Ninth Circuit precedent makes it clear that the "arising from" element of the specific jurisdiction test must be present for the exercise of specific jurisdiction to comply with due process.  *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995).  *See also Threlkeld v. Colorado*, 16 P.3d 359, 364 (Mont. 2000) ("To establish specific jurisdiction, the claim at issue must 'arise from' the act in question.").

This requirement is also a basic tenet of the law regarding specific jurisdiction.  As the United States Supreme Court recently reiterated, in order for a

court to exercise specific jurisdiction over a claim, "'the *suit*' must 'aris[e] out of or relat[e] to the defendant's contacts with the *forum*.'"  *Bristol-Meyers*, 137 S.Ct. at 1781 (*quoting Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (emphasis in original)).  *See also Walden*, 134 S. Ct. at 1121 (holding "the defendant's suit-related conduct must create a substantial connection with the forum State" to warrant specific jurisdiction); *Nicastro*, 564 U.S. at 881 ("Where a defendant 'purposefully avails itself of the privilege of conducting activities within the forum state' . . . it submits to the judicial power of an otherwise foreign sovereign *to the extent that power is exercised in connection with the defendant's activities touching on the State*.") (emphasis added).

Signal Peak also contends, however, that this requirement is not applicable here because Sullair acknowledges that it has sold equipment directly to Montana customers and distributors on other occasions.  Thus, Signal Peak argues, Sullair has otherwise purposely availed itself of the laws of the state of Montana.  But even assuming Sullair has purposefully availed itself of the Montana market in the past, the claims at issue must still arise from Sullair's Montana-related activities.  The Court finds that showing has not been met here.

The United States Supreme Court recently addressed this issue in *Britsol-Myers.*  There, the Supreme Court rejected California's "sliding scale approach" to the "arising from" element of the due process test.  *Britsol-Myers*, 137 S.Ct. at

1781.  The Court observed that under California's approach, "the strength of the requisite connection between the forum and the specific claims at issue is relaxed if the defendant has extensive forum contacts that are unrelated to those claims." *Id.* The Court held "[o]ur cases provide no support for this approach, which resembles a loose and spurious form of general jurisdiction." *Id.*

The "sliding scale approach" is essentially the path to jurisdiction Signal Peak is trying to take here.  Signal Peak insists that Sullair's previous, unrelated business dealings in Montana meet the threshold for specific jurisdiction.  But the facts alleged in the Complaint indicate that the claims arise solely from Sullair's non-forum related activities, and are unrelated to any other activity Sullair may have conducted in the state.  As Signal Peak itself concedes, the oil/air separator was not directly sold to Signal Peak or to any other Montana business or even a business directly dealing with Montana.  (Doc. 16 at 3.)  Sullair manufactured the oil/air separator in Indiana and sold it to an independent distributor in Texas.  That independent distributor then sold the product to Generon in Texas, who in turn sold it to Signal Peak and shipped it into Montana.

Because Signal Peak has not shown the claims at issue arose from Sullair's contacts with Montana, the exercise of specific jurisdiction would violate due

process.[4]  Accordingly, the Court may not exercise specific jurisdiction over Sullair.

### 4.    Jurisdictional Discovery

Signal Peak alternatively requests leave to conduct jurisdictional discovery should the Court be inclined to grant Sullair's motion.  Sullair opposes the request.

Where material jurisdictional facts are disputed, the district court has discretion to permit discovery to resolve factual issues.  *Bunch v. Lancair Int'l*, 202 P.3d 784, 799 (Mont. 2009) (*citing Minuteman Aviation Inc. v. M.R. Swearingin*, 772 P.2d 305, 308-09 (Mont. 1989)); *Data Disc, Inc.*, 557 F.2d 1280.  In granting jurisdictional discovery, the trial court has broad discretion.  *Data Disc*, 557 F.2d at 1285 n.1.  Jurisdictional discovery "should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary."  *Butcher's Union Local No. 498, United Food and Commercial Workers v. SDC Inc., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (quotations and citations omitted).

Here, the material jurisdictional facts are undisputed.  As Sullair points out, Signal Peak accepted all the factual allegations upon which the motion to dismiss

---

[4] Because the first two elements of the specific jurisdiction test are not met, the Court need not discuss the reasonableness element.  *See Omeluk*, 52 F.3d at 270-71 (stating that where it is plain the first two criteria are not satisfied, the court does not need to discuss the reasonableness criterion).

is based.  (*See* Doc. 16 at 2-3.)  Further, Signal Peak has not explained what it expects discovery might reveal, or how such discovery might result in facts that would establish personal jurisdiction.  Accordingly, the Court finds Signal Peak's requests for jurisdictional discovery should be denied.

### B.   Motion to Dismiss for Failure to State a Claim Under Federal Rule of Civil Procedure 12(b)(6)

In light of the Court's determination that there is no basis to assert personal jurisdiction over Sullair, the Court finds Sullair's motion for dismissal under Rule 12(b)(6) should be denied as moot.

## III.   CONCLUSION

Based on the foregoing, **IT IS RECOMMENDED** that Sullair's Motion to Dismiss the Complaint (Doc. 13) and Motion to Dismiss the Crossclaim (Doc. 20) on the basis of lack of personal jurisdiction be **GRANTED.**

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies

/ / /

/ / /

/ / /

/ / /

18

served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

**IT IS ORDERED**.

DATED this 3rd day of August, 2018

_____

TIMOTHY J. CAVAN
United States Magistrate Judge